LUCY LATHAM et al., on Behalf of Themselves and Others Similarly Situated, Appellants, *v.* FATHER DIVINE et al., Respondents.

Argued January 11, 1949; decided March 3, 1949.

*William C. Martin* and *Philip L. Zenner* for appellants. I. The amended complaint sets forth a cause of action in equity. (*Riggs* v. *Palmer,* 115 N. Y. 506; Restatement, Restitution, § 184; 3 Scott on Trusts, §§ 489.5, 489.6, pp. 2374–2376; 3 Bogert on Trusts and Trustees, § 473, p. 20; 1 Perry on Trusts [7th ed.], § 211, pp. 265, 371.) II. The facts alleged in the amended complaint entitle plaintiffs to the equitable relief sought. (*Riggs*

v. *Palmer,* 115 N. Y. 506; *Ransdell* v. *Moore,* 53 N. E. 767 [Ind.]; *Vance* v. *Grow,* 185 N. E. 335; *Thomas* v. *Briggs,* 189 N. E. 389; 4 Page on Wills, § 1764, p. 961; *Dixon* v. *Olmius,* 1 Cox Ch. Cas. 414; *Kelly* v. *Kelly,* 10 La. Ann. 622.) III. The rule of *Riggs* v. *Palmer* is in harmony with the statutes and the established policy of the State of New York regarding the statute of wills and the disposition of estates and supports plaintiffs' amended complaint, which seeks to enforce a constructive trust against defendants. (*Pope* v. *Garrett,* 211 S. W. 2d 559; *Monach* v. *Koslowski,* 78 N. E. 2d 4; *Matter of Sparks,* 172 Misc. 642; *People* v. *Schmidt,* 216 N. Y. 324; *130 Cedar St. Corp.* v. *Court Press, Inc.,* 267 App. Div. 194; *Matter of Horan* v. *Wallander,* 186 Misc. 40; *Bosworth* v. *Allen,* 168 N. Y. 157; *Lightfoot* v. *Davis,* 198 N. Y. 261; *Falk* v. *Hoffman,* 233 N. Y. 199.)

*Benjamin E. Shove* and *John J. Young* for David Diamond and another, individually and as administrators with the will annexed of Mary S. Lyon, deceased, respondents. I. The amended complaint fails to state a cause of action because it affirmatively appears on the face thereof that plaintiffs have no rights or interest in the estate of decedent and, therefore, plaintiffs having nothing upon which the court can act cannot call on the court either on its law side or its equity side for any protection, remedy or relief. (*Hutchins* v. *Hutchins,* 7 Hill 104; *Frankenberger* v. *Schneller,* 258 N. Y. 270; 3 Scott on Trusts, § 489.4, p. 2371; *Jex* v. *Straus,* 122 N. Y. 293; *Cohen* v. *Fisher & Co.,* 135 App. Div. 238; *Deobold* v. *Oppermann,* 111 N. Y. 531; *Herman* v. *Gutman,* 244 App. Div. 694; *Rhodes* v. *Ocean Accident & Guar. Corp.,* 235 App. Div. 340.) II. The amended complaint is fatally defective because it appears on the face thereof that what plaintiffs are seeking is to take under an unexecuted will. (*Matter of Allen,* 282 N. Y. 492; *Matter of McGill,* 229 N. Y. 405; *Matter of Andrews,* 162 N. Y. 1; *Reynolds* v. *Reynolds,* 224 N. Y. 429; *Matter of Rand,* 120 Misc. 670; *Matter of McCaffrey,* 174 Misc. 162.) III. Plaintiffs can claim no benefits or relief under *Riggs* v. *Palmer* (115 N. Y. 506). (*Matter of Sparks,* 172 Misc. 642; *Matter of Lonergan,* 63 N. Y. S. 2d 307.) IV. The amended complaint fails to state a cause of action in favor of plaintiffs because, except in paragraph 13, there is no allegation that decedent in any way made known to defendants

her desire to make any bequest to plaintiffs. (4 Pomeroy on Equity Jurisprudence [5th ed.], p. 125.) V. The amended complaint fails to state a cause of action because it is founded on an oral promise which the Statute of Frauds declares to be void. (*Bayreuther* v. *Reinisch,* 264 App. Div. 138, 290 N. Y. 553; *Blanco* v. *Velez,* 269 App. Div. 133, 295 N. Y. 224; *Matter of O'Hara,* 95 N. Y. 403; *Edson* v. *Bartow,* 154 N. Y. 199; *Reynolds* v. *Reynolds,* 224 N. Y. 429; *Matter of Ditson,* 177 Misc. 648.)

DESMOND, J. The amended complaint herein has, in response to a motion under rule 106 of the Rules of Civil Practice, been dismissed for insufficiency. Its principal allegations are these: plaintiffs are first cousins, but not distributees, of Mary Sheldon Lyon, who died in October, 1946, leaving a will, executed in 1943, which gave almost her whole estate to defendant Father Divine, leader of a religious cult, and to two corporate defendants in some way connected with that cult, and to an individual defendant (Patience Budd) said to be one of Father Divine's active followers; that said will has been, after a contest instituted by distributees, probated under a compromise agreement with the distributees, by the terms of which agreement, to which plaintiffs were not parties, the defendants just above referred to will receive a large sum from the estate; that after the making of said will, decedent on several occasions expressed " a desire and a determination to revoke the said will, and to execute a new will by which the plaintiffs would receive a substantial portion of the estate ", " that shortly prior to the death of the deceased she had certain attorneys draft a new will in which the plaintiffs were named as legatees for a very substantial amount, totalling approximately $350,000 "; that " by reason of the said false representations, the said undue influence and the said physical force " certain of the defendants " prevented the deceased from executing the said new Will "; that, shortly before decedent's death, decedent again expressed her determination to execute the proposed new will which favored plaintiffs, and that defendants " thereupon conspired to kill, and did kill, the deceased by means of a surgical operation performed by a doctor engaged by the defendants without the consent or knowledge of any of the relatives of the deceased."

Nothing is better settled than that, on such a motion as this, all the averments of the attacked pleading are taken as true. For present purposes, then, we have a case where one possessed of a large property and having already made a will leaving it to certain persons, expressed an intent to make a new testament to contain legacies to other persons, attempted to carry out that intention by having a new will drawn which contained a large legacy to those others, but was, by means of misrepresentations, undue influence, force, and indeed, murder, prevented, by the beneficiaries named in the existing will, from signing the new one. Plaintiffs say that those facts, if proven, would entitle them to a judicial declaration, which their prayer for judgment demands, that defendants, taking under the already probated will, hold what they have so taken as constructive trustees for plaintiffs, whom decedent wished to, tried to, and was kept from, benefiting.

We find in New York no decision directly answering the question as to whether or not the allegations above summarized state a case for relief in equity. But reliable texts, and cases elsewhere (see 98 A. L. R. 474 *et seq.*) answer it in the affirmative. Leading writers (3 Scott on Trusts, pp. 2371–2376; 3 Bogert on Trusts and Trustees, Part 1, §§ 473–474, 498, 499; 1 Perry on Trusts and Trustees [7th ed.], pp. 265, 371) in one form or another, state the law of the subject to be about as it is expressed in comment *i* under section 184 of the Restatement of the Law of Restitution: "*Preventing revocation of will and making new will.* Where a devisee or legatee under a will already executed prevents the testator by fraud, duress or undue influence from revoking the will and executing a new will in favor of another or from making a codicil, so that the testator dies leaving the original will in force, the devisee or legatee holds the property thus acquired upon a constructive trust for the intended devisee or legatee."

A frequently-cited case is *Ransdel* v. *Moore* (153 Ind. 393) where, with listing of many authorities, the rule is given thus (pp. 407–408): " when an heir or devisee in a will prevents the testator from providing for one for whom he would have provided but for the interference of the heir or devisee, such heir or devisee will be deemed a trustee, by operation of law, of the property, real or personal, received by him

from the testator's estate, to the amount or extent that the defrauded party would have received had not the intention of the deceased been interfered with. This rule applies also when an heir prevents the making of a will or deed in favor of another, and thereby inherits the property that would otherwise have been given such other person." (To the same effect, see 4 Page on Wills [3d ed.], p. 961.)

While there is no New York case decreeing a constructive trust on the exact facts alleged here, there are several decisions in this court which, we think, suggest such a result, and none which forbids it. *Matter of O'Hara* (95 N. Y. 403), *Trustees of Amherst College* v. *Ritch* (151 N. Y. 282), *Edson* v. *Bartow* (154 N. Y. 199), and *Ahrens* v. *Jones* (169 N. Y. 555) which need not be closely analyzed here as to their facts, all announce, in one form or another, the rule that, where a legatee has taken property under a will, after agreeing, outside the will, to devote that property to a purpose intended and declared by the testator, equity will enforce a constructive trust to effectuate that purpose, lest there be a fraud on the testator. (In *Williams* v. *Fitch*, 18 N. Y. 546, a similar result was achieved in a suit for money had and received.) In each of those four cases first above cited in this paragraph, the particular fraud consisted of the legatee's failure or refusal to carry out the testator's designs, after tacitly or expressly promising so to do. But we do not think that a breach of such an engagement is the only kind of fraud which will impel equity to action. A constructive trust will be erected whenever necessary to satisfy the demands of justice. Since a constructive trust is merely " the formula through which the conscience of equity finds expression " (*Beatty* v. *Guggenheim Exploration Co.*, 225 N. Y. 380, 386; see 3 Bogert on Trusts and Trustees, Part 1, § 471; *Lightfoot* v. *Davis*, 198 N. Y. 261; *Falk* v. *Hoffman*, 233 N. Y. 199; *Meinhard* v. *Salmon*, 249 N. Y. 458; also, see, Warren in 41 Harv. L. Rev. 309 *et seq.*), its applicability is limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them. Nothing short of true and complete justice satisfies equity, and, always assuming these allegations to be true, there seems no way of achieving total justice except by the procedure used here.

The Appellate Division held that *Hutchins* v. *Hutchins* (7 Hill 104) decided by the Supreme Court, our predecessor, in 1845, was a bar to the maintenance of this suit. *Hutchins* v. *Hutchins* (*supra*) was a suit at law, dismissed for insufficiency in the days when law suits and equity causes had to be brought in different tribunals; the law court could give nothing but a judgment for damages (see discussion in 41 Harv. L. Rev. 313, *supra*). Testator Hutchins' son, named in an earlier will, charged that defendant had, by fraud, caused his father to revoke ·that will and execute a new one, disinheriting plaintiff. The court sustained a demurrer to the complaint, on the ground that the earlier will gave the son no title, interest or estate in his father's assets and no more than a hope or expectancy, the loss of which was too theoretical and tenuous a deprivation to serve as a basis for the award of damages (see, also, *Simar* v. *Canaday,* 53 N. Y. 298, 302, 303). Plaintiffs' disappointed hopes in the present case, held the Appellate Division, were similarly lacking in substance. But disappointed hopes and unrealized expectations were all that the secretly intended beneficiaries, not named in the wills, had in *Matter of O'Hara, Trustees of Amherst College* v. *Ritch* and *Edson* v. *Bartow* (*supra*) but that in itself was not enough to prevent the creation of constructive trusts in their favor. *Hutchins* v. *Hutchins* (*supra*), it seems, holds only this: that in a suit at law there must, as a basis for damages, be an invasion of a common-law right. To use that same standard in a suit for the declaration and enforcement of a constructive trust would be to deny and destroy the whole equitable theory of constructive trusts.

Nor do we agree that anything in the Decedent Estate Law or the Statute of Frauds stands in the way of recovery herein. This is not a proceeding to probate or establish the will which plaintiffs say testatrix was prevented from signing, nor is it an attempt to accomplish a revocation of the earlier will, as were *Matter of Evans* (113 App. Div. 373) and *Matter of McGill* (229 N. Y. 405, 411). The will Mary Sheldon Lyon did sign has been probated and plaintiffs are not contesting, but proceeding on, that probate, trying to reach property which has effectively passed thereunder (see *Ahrens* v. *Jones,* 169 N. Y. 555, 561, *supra*). Nor is this a suit to enforce an agreement to

make a will or create a trust, or any other promise by decedent (Personal Property Law, § 31; see *Frankenberger* v. *Schneller,* 258 N. Y. 270; *Bayreuther* v. *Reinisch,* 264 App. Div. 138, affd. 290 N. Y. 553; *Blanco* v. *Velez,* 295 N. Y. 224). This complaint does not say that decedent, or defendants, promised plaintiffs anything, or that defendants made any promise to decedent. The story is, simply, that defendants, by force and fraud, kept the testatrix from making a will in favor of plaintiffs. We cannot say, as matter of law, that no constructive trust can arise therefrom.

The ultimate determinations in *Matter of O'Hara* and *Edson* v. *Bartow* (*supra*) that the estates went to testators' distributees do not help defendants here, since, after the theory of constructive trust had been indorsed by this court in those cases, the distributees won out in the end, but only because the secret trusts intended by the two testators were, in each case, of kinds forbidden by statutes.

We do not agree with appellants that *Riggs* v. *Palmer* (115 N. Y. 506) completely controls our decision here. That was the famous case where a grandson, overeager to get the remainder interest set up for him in his grandfather's will, murdered his grandsire. After the will had been probated, two daughters of the testator who, under the will, would take if the grandson should predecease testator, sued and got judgment decreeing a constructive trust in their favor. It may be, as respondents assert, that the application of *Riggs* v. *Palmer* (*supra*) here would benefit not plaintiffs, but this testator's distributees. We need not pass on that now. But *Riggs* v. *Palmer* (*supra*) is generally helpful to appellants, since it forbade the grandson profiting by his own wrong in connection with a will; and, despite an already probated will and the Decedent Estate Law, *Riggs* v. *Palmer* (*supra*) used the device or formula of constructive trust to right the attempted wrong, and prevent unjust enrichment.

The reference to a conspiracy in the complaint herein makes it appropriate to mention *Keviczky* v. *Lorber* (290 N. Y. 297). Keviczky, a real estate broker, got judgment on findings that a conspiracy by defendants had prevented him from earning a commission which he would otherwise have gotten. All sides agreed that he had not in fact performed the engagement which

would have entitled him to a commission as such; thus, when the conspiracy intervened to defeat his efforts, he had no contractual right to a commission but only an expectation thereof which was frustrated by the conspirators. Thus again we see, despite the broad language of *Hutchins* v. *Hutchins* (*supra*) that it is not the law that disappointed expectations and unrealized probabilities may never, under any circumstances, be a basis for recovery.

This suit cannot be defeated by any argument that to give plaintiffs judgment would be to annul those provisions of the Statute of Wills requiring due execution by the testator. Such a contention, if valid, would have required the dismissal in a number of the suits herein cited. The answer is in *Ahrens* v. *Jones* (169 N. Y. 555, 561, *supra*): " ' The trust does not act directly upon the will by modifying the gift, for the law requires wills to be wholly in writing, but it acts upon the gift itself as it reaches the possession of the legatee, or as soon as he is entitled to receive it. The theory is that the will has full effect by passing an absolute legacy to the legatee, and that then equity, in order to defeat fraud, raises a trust in favor of those intended to be benefited by the testator, and compels the legatee, as a trustee *ex maleficio,* to turn over the gift to them. ' "

The judgment of the Appellate Division, insofar as it dismissed the complaint herein, should be reversed, and the order of Special Term affirmed, with costs in this court and in the Appellate Division. [See 299 N. Y. 599.]

LOUGHRAN, Ch. J., CONWAY and FULD, JJ., concur with DESMOND, J.; LEWIS and DYE, JJ., dissent and vote for affirmance upon the grounds stated by VAUGHAN, J., writing for the Appellate Division.

Judgment reversed, etc.